IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re:<br>Angie Wynn Strickland,<br>　　　　　Debtor. | } } } } | Case No. 19-41331-JJR13 |
| Dorothy Bone, Conservator of the Estate<br>Of Ruth Maxine Wynn Epperson, an<br>Incapacitated Person,<br>　　　　　Plaintiff,<br>v.<br>Angie Wynn Strickland,<br>　　　　　Defendant. | } } } } } } } } } } } } | AP No. 19-40047-JJR |

OPINION REGARDING MOTION TO ALTER OR AMEND JUDGMENT

The court entered an order and an opinion (AP Docs. 83, 84) in this adversary proceeding on January 14, 2021, declaring that a state court judgment owing by Strickland to the Conservator charged with managing the affairs and assets of Strickland's demented mother was non-dischargeable under Bankruptcy Code § 523(a).[1] Strickland filed a Motion to Alter or Amend Judgment (AP Doc. 87) arguing that the court's earlier opinion and order were based on a misinterpretation of Alabama law. The court's error, according to Strickland, was its finding that a deed signed by Epperson—Strickland's mother—as grantor, but never delivered and never properly acknowledged, was nonetheless a "deed" and that Strickland's fraudulent and wrongful

---

[1] Terms defined in the opinion, AP Doc. 84, shall have the same meanings when used herein unless the context indicates otherwise.

taking of the same constituted larceny. A debt incurred through larceny is nondischargeable under Code § 523(a)(4).

Black's Law Dictionary 896 (8th ed. 2004) defines larceny as "[t]he wrongful and fraudulent taking and carrying away by one person of the mere personal goods of another from any place, with a felonious intent to convert them to [the taker's] use, and make them [the taker's] property, without the consent of the owner." Personal property in Alabama includes, "money, goods, chattels, things in action and evidence of debt, *deeds* and conveyances (emphasis added)." Ala. Code § 1-1-1(8) (1975). Strickland maintains that the deed she admittedly stole from her mother's lockbox was not in fact a "deed" because, although it was signed by Epperson as the grantor, it was not capable of conveying title because it was never properly delivered or acknowledged and, therefore, its wrongful taking did not constitute larceny.

It is axiomatic that a deed that purports to convey Alabama real property, although signed by the grantor, must still be properly acknowledged and delivered to the grantee before it is effective to pass title. Under Strickland's argument, only a delivered and properly acknowledged document that meets all the requirements to transfer title to real property may qualify as a "deed" under Alabama law. According to Strickland, a piece of paper signed by its maker, in the form and with the content of a deed, but never delivered or acknowledged, does not qualify as a "deed" because it is ineffective to transfer title and, therefore, does not constitute "personal property" under Alabama law, and its wrongful taking cannot constitute larceny under Code § 523(a)(4).

The Alabama legislature could have easily limited its definition of what constitutes personal property to include the words "delivered" or "properly acknowledged" or "effective" or other words of similar import to describe "deeds" in Ala. Code § 1-1-1(8) (1975) if it intended that

only properly acknowledged and delivered deeds could qualify as personal property under Alabama law. The plain language of that statute contains no such limitation.

Strickland's argument that a deed is not a deed unless and until it is acknowledged and delivered in a form sufficient to transfer title would make the concepts of an "ineffective deed" or even an "undelivered deed" logical inconsistencies and legal impossibilities—ineffectiveness or failure of delivery would instead render the deed not a deed at all under Strickland's logic. Such a result would fly in the face of Alabama law, practical experience, and common sense, all of which establish that an undelivered deed or even an ineffective deed is still a deed. "Generally, a deed is ineffective until it is delivered. The question of whether a deed has been delivered is one of fact . . .." *West v. West*, 520 So. 2d 640, 642 (Ala. 1993) (internal citations omitted). If Strickland were correct, the supreme court would have said, "Generally, a deed is not a deed until it is delivered," and it would be nonsense for the supreme court to question whether a deed had been delivered if a deed could not exist unless its delivery had already been accomplished. This is simply not the case under Alabama law.

And even if the court's finding that the stolen document was a "deed" under Alabama law was error, the Conservator convincingly points out in her Response in Opposition to Defendant's Motion to Alter or Amend (AP Doc. 97) that the unnotarized and undelivered document would nonetheless qualify as tangible personal property which would be capable of being the subject of larceny under Code § 523(a)(4) even if it did not qualify as a "deed." The cases cited by Strickland on the definition of "larceny" involve criminal statutes for larceny in other states and do not involve the definition of larceny as that term is defined under federal law for purposes of nondischargeability, and are not persuasive. The first step in Strickland's fraudulent scheme to gain control of her mother's real property was to steal the undelivered deed, which was her

mother's personal property whether it was effective to transfer title or not, and then fenagle its acknowledgement by deluding her demented mother as well as the notary public, who apparently unwittingly enabled Strickland to complete her sham delivery of the deed and its "virtual" notarization via video call. The fraudulent taking of that personal property (the undelivered, unacknowledged deed) was preclusively established by the State Court's findings and satisfied the elements of larceny under § 523(a)(4).

Accordingly, the court will enter an order denying Strickland's motion to alter or amend (AP Doc. 87) in conformity with this opinion.

So done this 12th day of March 2021.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTCY JUDGE